UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RONALD SATISH EMRIT,

    Plaintiff,

v.                          Case No.: 8:19-cv-2562-T-33SPF

UNIVERSAL MUSIC GROUP,
ISLAND DEF JAM GROUP,
ESTATE OF SHAKIR STEWART,
and RICK ROSS,

    Defendants.
_____/

**ORDER**

    This matter comes before the Court pursuant to Defendants Island Def Jam Group, Rick Ross, and Universal Music Group's Motion to Dismiss (Doc. # 60), filed on July 23, 2020. Pro se Plaintiff Ronald Satish Emrit responded on August 10, 2020. (Doc. # 65). For the reasons that follow, the Motion is granted as set forth herein.

**I.   Background**

    Emrit is no stranger to federal court. Since 2013, Emrit has filed hundreds of pro se cases in federal courts across the country — including multiple cases in the Middle District of Florida — and has been designated as a vexatious litigant in multiple districts. See Emrit v. Universal Music Grp., No. 3:19-CV-05984-BHS, 2019 WL 6251365, at *2 (W.D. Wash. Nov. 4,

1

2019)("Plaintiff has a history of abusing the IFP privilege and Plaintiff has been acknowledged as a vexatious litigator in at least six district courts. The Ninth Circuit has also entered a pre-filing review order against Plaintiff. Further, a search of the Pacer electronic case database for cases filed under the name Ronald Satish Emrit shows Plaintiff has filed approximately 375 cases or appeals in the federal court system.")(citations omitted), report and recommendation adopted, No. C19-5984 BHS, 2019 WL 6251192 (W.D. Wash. Nov. 22, 2019); Emrit v. Fed. Bureau of Investigation, No. 20-CV-265-CAB-KSC, 2020 WL 731171, at *1 (S.D. Cal. Feb. 13, 2020)("A PACER search reveals that Plaintiff has filed over 250 federal lawsuits since 2013, including 31 so far in 2020. These complaints have been filed in courts ranging from the District of Hawaii to the District of Nebraska to the District of Massachusetts.").

Emrit, proceeding pro se, brought this action on October 10, 2019. (Doc. # 1). He alleges that "all four Defendants have committed substantial copyright infringement in which the Defendants have used the same 'original works of authorship' that [he] has used in one of his songs copyrighted with the Library of Congress." (Id. at 1). Emrit claims that his brother-in-law told him in July 2019 that "the recording

artist Rick Ross had been using the same background beat in his song 'Billionaire' (off of his 'Skrilla' album) as [Emrit] uses in his song 'Dilemma' off of [Emrit's] album 'Welcome to Atlantis.'" (Id. at 2). Based on this allegedly unauthorized use, Emrit seeks to hold Defendants liable for copyright infringement, conversion, tortious interference with business relations, and tortious interference with contracts. (Id. at 10-16).

Less pertinent allegations in the complaint include that Emrit "briefly attended Morehouse College in the spring semester of 1996," "attended the University of Memphis in 1997 as a graduate student trying to obtain a Master's Degree in Science [] in the field of Biology," and "worked at the Memphis Animal Shelter." (Id. at 3-4). Emrit also notes that the "original CEO of Island Def Jam Group was Russell Simmons, i.e. a mogul and entrepreneur who is now contemplating becoming a 'flight risk' from prosecution in the state of New York . . . as he is trying to travel to Bali in Indonesia which has no extradition treaty with the United States." (Id.). Finally, in his prayer for relief, Emrit requests a judgment for $250,000 and asks the Court to "mandat[e] that [he] be signed to a '360 deal' with Island Def Jam Group and/or Universal Music Group [] with a controlled composition

clause, cross-collateralization clause, and Minimum Delivery and Release Commitment (MDRC), and certainly not a 'demo deal.'" (Id. at 16-18).

Emrit was granted permission to proceed in forma pauperis. (Doc. # 7). Soon after filing this case, Emrit filed three other substantively identical cases against the same four Defendants in the Central District of California, the Western District of Washington, and the District of Hawaii. See Universal Music Grp., 2019 WL 6251365, at *2 ("Here, Plaintiff initiated this same lawsuit by filing the same complaint, naming the same Defendants, in both the Central District of California and the Middle District of Florida."); see also Emrit v. Universal Music Grp., No. CV 19-00670 HG-KJM, 2019 WL 7759129, at *1 (D. Haw. Dec. 18, 2019), report and recommendation adopted, No. CV 19-00670 HG-KJM, 2020 WL 465018 (D. Haw. Jan. 28, 2020).

Subsequently, Emrit was designated as a vexatious litigant in the Middle District of Florida. See Emrit v. DeVos, No. 8:20-cv-773-T-60TGW (M.D. Fla. Apr. 20, 2020)(Doc. # 11). Another copyright infringement case against music business entities that Emrit filed in this District before he was designated a vexatious litigant was dismissed without leave to amend on April 23, 2020. See Emrit v. Horus Music

4

Video Distr., No. 8:19-cv-2531-T-60JSS, 2020 WL 1955330, at
*1 (M.D. Fla. Apr. 23, 2020). That Order explained that
"Emrit's complaint is 'conclusory and patently frivolous'
where he fails to draw any connection between his legal claims
and the factual allegations of his complaint." Id.

Emrit's vexatious litigant status is well-deserved.
Since the initiation of this case, Emrit has filed numerous
frivolous motions. (Doc. ## 11, 15-19, 21, 27-30, 39-40, 45-
46). And he has continued to do so despite warnings from this
Court. For example, on March 6, 2020, the Court advised:
"Emrit's motions waste scarce judicial resources and do
nothing to advance Emrit's claim. The Court warns Emrit that
continued filing of multiple meritless motions will not be
tolerated by the Court and could result in the imposition of
sanctions." (Doc. # 36 at 5). Again, on April 7, 2020, the
Court "encourage[d] Emrit to cease filing meritless motions."
(Doc. # 47).

Emrit has ignored these warnings and continued his
frivolous filings, including:

- (Doc. # 56)(another "motion in limine to introduce
  extrinsic evidence," including evidence to "show that
  [Emrit] went to school with Dan Quayle's sons Tucker and

Ben and therefore [Emrit] has had the best of schooling in his life including earning a Bachelor's Degree (B.A.) from Brown University (Ivy League)");

- (Doc. # 58)(a notice of change of address in which Emrit announces that he (i) has moved to Maryland for the summer, (ii) recently met a videographer through Craigslist, (iii) has previously traveled to Buenos Aires, Argentina, and (iv) is "interested in obtaining a 'carta de invitacion' for a woman named Solans from Las Tunas, Cuba through the Treasury Department Office of Foreign Assets Control");

- (Doc. # 66)(a motion to compel discovery asking the Court to, among other things, "take judicial notice that [Emrit] was a Democratic presidential candidate in 2016, 2020, and [] will again be a presidential candidate in 2024" and that Emrit "had litigated 12 lawsuits against the Federal Bureau of Investigation (FBI) as a pro se plaintiff");

- (Doc. # 67)(a motion for issuance of subpoena noting, among other things, that he "has already spoken with attorney Griffin Klema, Tampa, FL-based attorney that represents Rick Ross which involves a conflict of

interest and perhaps imputed disqualification for any attorney with his law firm to be a zealous advocate on behalf of [Emrit] with regards to this copyright dispute");

- (Doc. # 68)(a motion for hearing stating, among other things, that Emrit "was a presidential candidate in 2016 and 2020 and [he] plans to run again for president in 2024" and asking the Court to "take judicial notice that the applicable laws in campaign finance law are the McCain-Feingold Act, Ethics in Government Act, and Federal Election Campaign Act");

- (Doc. # 69)(a motion for declaratory judgment asking, among other things, that the Court assign Emrit's licensing and publishing rights in his upcoming album to Defendants if the Court "agree[s] that there is enough legal detriment and bargained-for-exchange pursuant to the Peppercorn Theory of Consideration");

- (Doc. # 70)(a motion for directed verdict asking the Court to, among other things, order Universal Music Group and Island Def Jam Group to "finance [Emrit's] next album 'Rough Draft of Publicity Stunts'" and to take judicial notice that Emrit sued "Ewing Brothers

Towing at Clark County District Court at 200 Lewis Avenue
in Las Vegas, Nevada because [his] laptop with his music
[] had allegedly been stolen from the trunk" of his car);

- (Doc. # 71)(Emrit's second motion for summary judgment
arguing, among other things, that "the board of
directors for Disney/ABC/ESPN is violating the Business
Judgment Rule and could be subjected to a stock-holder
derivative action or Chapter 11 Reorganization by
opening up Disney World in Orlando, Florida and trying
to promote the 'Bubble' for the NBA so that ESPN can
have something to discuss notwithstanding the fact that
the world and America are currently going through a
COVID-19/Coronavirus pandemic");

- (Doc. # 72)(a motion for preliminary injunction asking
the Court to, among other things, take judicial notice
that Emrit "has had over 12 lawsuits and appeals against
the FBI nationwide and that [Emrit] was a Democratic
presidential candidate in 2016 and 2020");

- (Doc. # 73)(a motion to compel arbitration arguing,
among other things, that Emrit "is more marketable as a
recording artist than corny, tacky [] artists such as
Gucci Mane, Kevin Gates, Travis Scott, Cardi B, Doja

Cat, and Tekashi-69, who will not even be a footnote to history and do not compare to legendary artists such as Marvin Gaye and John Lennon");

- (Doc. # 74)(a motion for judgment notwithstanding the verdict, filed even though this case is still in the pleading stage);

- (Doc. # 75)(a motion for default judgment against all Defendants, filed even though Emrit knows that three Defendants have filed the instant Motion to Dismiss);

- (Doc. # 78)(a notice of intent to file a writ of certiorari with the Supreme Court in which Emrit notes his various mental health conditions and informs the Court of his attempt "to obtain a fiancé or K-1 visa for his fiancé Mary from Kharkiv, Ukraine");

- (Doc. # 79)(a motion for joinder of five additional defendants because Emrit suspects that one of these entities is a "Performing Rights Organization (PRO) with which 'Rick Ross' is in privity of contract (by signing an IRS Form W-9)").

Now, Island Def Jam Group, Ross, and Universal Music Group seek dismissal of the complaint. (Doc. # 60). Emrit has responded (Doc. # 65), and the Motion is ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "The scope of review must be limited to the four corners of the complaint" and attached exhibits. St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).

Additionally, motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack

jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). Finally, a motion to dismiss for lack of personal jurisdiction may be filed pursuant to Rule 12(b)(2). Fed. R. Civ. P. 12(b)(2).

III. **Analysis**

Defendants raise many grounds for dismissal of the complaint.

A. **Personal Jurisdiction**

First, Defendants argue that this Court lacks personal jurisdiction over Universal Music Group. The Court agrees.

Courts use a two-part analysis to determine whether personal jurisdiction over a defendant is proper. Lockard v. Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir. 1998). The first step involves determining whether the forum state's long-arm statute provides a basis for jurisdiction. Id. Then, the Court must determine whether there are sufficient minimum contacts between the forum state and the defendant to satisfy due process. Id.

The general jurisdiction provision of the Florida long-arm statute provides: "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of

this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). As the Eleventh Circuit has explained, "[t]he reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." Fraser v. Smith, 594 F.3d 842, 846 (11th Cir. 2010). Thus, "[w]ith respect to general jurisdiction under Florida's long-arm statute," the Court "need only determine whether the . . . exercise of jurisdiction over [Universal Music Group] would exceed constitutional bounds." Id.

Concerning due process, courts may assert general jurisdiction over foreign corporations "to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)(quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 311 (1945)). However, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). "A corporation's place of incorporation and its principal place of business are 'paradigm all-purpose forums.'" Carmouche v.

12

Tamborlee Mgmt., Inc., 789 F.3d 1201, 1204 (11th Cir. 2015)(quoting Daimler, 571 U.S. at 137). "Outside of these two exemplars, a defendant's operations will be so substantial and of such a nature as to render the corporation at home in that State only in an exceptional case." Waite v. All Acquisition Corp., 901 F.3d 1307, 1317 (11th Cir. 2018)(quotation omitted).

The complaint in this action fails to support the exercise of general jurisdiction over Universal Music Group. The complaint expressly alleges that Universal Music Group's principal place of business is in Santa Monica, California. (Doc. # 1 at 3). The Complaint does not set forth Universal Music Group's state of incorporation. Accordingly, the Court cannot exercise general jurisdiction over Universal Music Group on the basis of its principal place of business or state of incorporation. Moreover, nothing in the complaint suggests that this is an "exceptional case" where Universal Music Group's activities in Florida are "so substantial and of such a nature as to render the corporation at home in that State." Waite, 901 F.3d at 1317.

Indeed, Emrit failed to address the personal jurisdiction argument in his response at all and thus has conceded that personal jurisdiction does not exist for

Universal Music Group. See Melendez v. Town of Bay Harbor Islands, No. 14-22383-CIV, 2014 WL 6682535, at *7 (S.D. Fla. Nov. 25, 2014)(striking demand for punitive damages because plaintiff "wholly fail[ed] to address this argument in her Response [], and therefore concedes the point"); Brady v. Medtronic, Inc., No. 13-CV-62199-RNS, 2014 WL 1377830, at *6 (S.D. Fla. Apr. 8, 2014)("Brady effectively concedes that his strict product liability claims must be dismissed; he fails to address this argument in his opposition to the Motion to Dismiss."); Glass v. Lahood, 786 F. Supp. 2d 189, 210 (D.D.C. 2011)("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citation omitted)), aff'd, No. 11-5144, 2011 WL 6759550 (D.C. Cir. Dec. 8, 2011). Thus, general jurisdiction over Universal Music Group does not exist.

Emrit has also failed to establish specific personal jurisdiction. Florida's long-arm statute provides in relevant part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and,

if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

1.  Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

2.  Committing a tortious act within this state.

3.  Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.

. . .

6.  Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

a.  The defendant was engaged in solicitation or service activities within this state; or

b.  Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state    in the ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193(1)(a).

If the long-arm statute is satisfied, the Court must next determine whether the exercise of specific jurisdiction over Universal Music Group comports with due process. To make this determination, the Court must apply a three-part test examining whether (1) the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the

forum; (2) the defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013).

Again, Emrit has failed to address the personal jurisdiction argument in his response and thus has conceded that specific jurisdiction does not exist for Universal Music Group. See Melendez, 2014 WL 6682535, at *7. Furthermore, as Defendants correctly explain, the complaint "fails to allege a single incident or action connecting [Universal Music Group] to the forum jurisdiction pursuant to the provisions set forth in Florida's long-arm statute," such as an allegation that Universal Music Group "transacted business in the State of Florida," "contracted to supply services or conduct business in the State of Florida," "caused tortious injury in [] Florida by virtue of an act or omission in the forum or outside the forum," or "engaged in a persistent course of conduct, derived substantial revenue from goods used or consumed, or rendered any services in [] Florida." (Doc. # 60 at 20). The Court lacks specific jurisdiction over Universal Music Group.

Because the Court lacks personal jurisdiction over Universal Music Group, all claims against Universal Music Group are dismissed without prejudice.

**B.    Shotgun Complaint**

Next, Defendants argue the complaint should be dismissed as a shotgun complaint.[1] The Court agrees.

"A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e) on the ground that the complaint provides it with insufficient notice to enable it to file an answer." Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1126-27 (11th Cir. 2014)(footnotes omitted).

The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings": (1) "a complaint containing multiple counts where each count adopts the allegations of

---

[1] Defendants argue at one point in their Motion that the Court lacks subject matter jurisdiction over the copyright infringement claim because Emrit has not alleged he registered his copyright. (Doc. # 60 at 13-15). While Defendants are correct about the importance of a registered copyright as a precondition to suit, they are incorrect that the registration issue is a jurisdictional problem. See Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 157 (2010)("Section 411(a)'s registration requirement is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction."). Thus, there are no subject matter jurisdiction issues for the Court to resolve.

all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1322-23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323.

Here, the complaint asserts each count against all four Defendants without alleging which Defendant committed which acts. For example, in count three, the complaint alleges "all four of the defendants in the present case at bar should be held liable for the tortious interference with business relations." (Doc. # 1 at 15). In short, the complaint lumps all four Defendants together without differentiating between them and their conduct. Thus, the complaint is the fourth

18

type of shotgun complaint identified in <u>Weiland</u> and must be dismissed.

**C.   <u>Leave to Amend</u>**

Federal Rule of Civil Procedure 15(a) states that leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The Court "need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." <u>Bryant v. Dupree</u>, 252 F.3d 1161, 1163 (11th Cir. 2001).

Given Emrit's history of filing vexatious and harassing lawsuits (including multiple duplicates of this action), as well as his numerous frivolous and vexatious filings in this case, the Court will not grant Emrit leave to file an amended complaint. <u>See</u> <u>Papadopoulos v. Amaker</u>, No. 12-CV-3608 DLI RLM, 2013 WL 3226757, at *5 (E.D.N.Y. June 25, 2013)(declining to sua sponte grant a pro se litigant leave to amend, even though courts usually give pro se litigants leave to amend at least once, "in light of Plaintiff's extensive litigation history, in this district and others, and the frivolous nature of certain allegations"); <u>Brett v. Garcia</u>, No. 6:15-cv-638-

19

ORL-40, 2015 WL 3404490, at *2 (M.D. Fla. May 26, 2015)(declining to grant a pro se plaintiff leave to amend his complaint based on his "long history of filing frivolous suits in the Middle District of Florida" and other districts and "the lack of any basis in the complaint to conclude that Plaintiff could state a cognizable cause of action in an amended complaint").

Leave to amend should not be granted because Emrit is proceeding in bad faith. See Gianetti v. Blue Cross & Blue Shield of CT., Inc., 351 F. App'x 520, 522 (2d Cir. 2009)(finding district court did not abuse discretion in denying leave to amend where pro se plaintiff's "long history of bringing vexatious claims against former patients and insurance providers suggests the appearance of bad faith"). As Emrit well knows, "[f]rivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith claims." Emrit v. Simon, No. 17-CV-4605 (SRN/SER), 2017 WL 11483901, at *3 (D. Minn. Nov. 14, 2017)(citation omitted), report and recommendation adopted, No. 17-CV-4605 (SRN/SER), 2017 WL 11483905 (D. Minn. Dec. 8, 2017).

The Order designating Emrit a vexatious litigant in this District held — and this Court agrees — that Emrit is

"obviously not proceeding in good faith"; rather, Emrit is a "savvy and experienced pro se litigant" who "understand[s] the legal system's reluctance to sanction [him] and use[s] it to [his] advantage." Emrit v. DeVos, No. 8:20-cv-773-T-60TGW (M.D. Fla. Apr. 20, 2020)(Doc. # 11 at 7); see also Universal Music Grp., 2019 WL 6251365, at *2 ("The Court finds the Proposed Complaint is frivolous and malicious as it is part of Plaintiff's ongoing and persistent pattern of abusing the IFP privilege by filing vexatious, harassing, and duplicative lawsuits."); Emrit v. Yahoo! Inc., No. C 13-5951 SBA, 2014 WL 3841015, at *3 (N.D. Cal. Aug. 4, 2014)(dismissing case with prejudice as "sanction for [Emrit's] intentional and bad faith conduct," including "intentionally misrepresent[ing] his financial condition and litigation history in bad faith").

It is clear that Emrit has filed this action — and others — against Defendants in a bad faith attempt to force Universal Music Group to give him a record deal. See, e.g., (Doc. # 1 at 18)(asking in the complaint's prayer for relief that the Court "mandat[e] that [Emrit] be signed to a '360 deal' with Island Def Jam Group and/or Universal Music Group [] with a controlled composition clause, cross-collateralization clause, and Minimum Delivery and Release Commitment (MDRC),

and certainly not a 'demo deal'"); (Doc. # 11 at 1)(Emrit's first motion for preliminary injunction in this case, requesting the Court "issue the equitable remedy of specific performance and/or an injunction mandating that [Universal Music Group] sign [Emrit] to a '360 deal' as a commercial recording contract as opposed to the procedurally and substantively unconscionable 'demo deal'"); Emrit v. Indep. Music Awards, IMA, 605 F. App'x 103, 104 n.1 (3d Cir. 2015)("On appeal, Emrit also requests specific performance or injunctive relief in the form of a commercial recording contract with Universal Music Group, Warner Music Group, or Sony BMG to produce the seven music videos he submitted to the contest."); Emrit v. YouTube, LLC, No. 3:15-cv-2245-GPC-JLB (S.D. Cal. Oct. 8, 2015)(Doc. # 1 at 12)(stating in complaint against seven defendants, including Universal Music Group, that Emrit was "requesting the equitable remedy of an injunction or specific performance mandating that [he] be offered a commercial recording contract by either [Universal Music Group], Sony BMG, or WMG in the form of a '360 deal'"). The Court cannot condone such harassing conduct.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**

(1)   Defendants   Island   Def   Jam   Group,   Rick   Ross,   and

       Universal Music Group's Motion to Dismiss (Doc. # 60) is

       **GRANTED**.

(2)   Pro se Plaintiff Ronald Satish Emrit's complaint (Doc.

       # 1) is dismissed as to the claims against Universal

       Music Group for lack of personal jurisdiction. All other

       claims in the complaint are dismissed with prejudice.

(3)   The Clerk is directed to **CLOSE** this case.

       **DONE** and **ORDERED** in Chambers in Tampa, Florida, this

<u>17th</u> day of August, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE